[Cite as *State v. Hill*, 2011-Ohio-2968.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24234 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-CR-2383 |
| v. | : | |
| | : | (Criminal Appeal from |
| JEFFREY HILL | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of June, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LAURA M. WOODRUFF, Atty. Reg. #0084161, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JENNIFER S. GETTY, Atty. Reg. 0074317, 46 East Franklin Street, Centerville, Ohio 45459
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Jeffrey Hill appeals from his conviction and sentence, following a no-contest plea, on one count of Possession of Heroin, in an amount less than one gram. Hill contends that the trial court erred in overruling his motion to suppress evidence

and statements.  We conclude that the trial court did not err.  Accordingly, the judgment of the trial court is Affirmed.

I

**{¶ 2}**  Dayton Police Officer Jeff Hieber, a uniformed officer, in a marked police cruiser, was on routine patrol one evening in late July, 2009, when he was dispatched to the Express Mart.  The owner or manager on duty had reported that an unknown black male, wearing a green T-shirt, was selling drugs in the store's parking lot.

**{¶ 3}**  When Hieber responded to the scene, he saw Hill, a black man wearing a green shirt, sitting in a vehicle in the parking lot.  Hill was the only person in the parking lot at that time.

**{¶ 4}**  Hieber parked his cruiser behind Hill's vehicle, and approached Hill on foot.  According to Hieber, Hill "started making furtive movements.  He started – he looked – he was manipulating or doing something in his lap area.  He had his head down.  He was doing something like this (demonstrating) and then he kept on looking around and then he started doing something real fervently [sic] (demonstrating).  I saw his hands moving like this (demonstrating) and he kept on looking back and he was going like this (demonstrating) like if you had been eating food and you had, you know, crumbs or whatever over you.  And he was brushing his shirt (demonstrating) and kept on looking back."

**{¶ 5}**  As Hieber approached, Hill's car began creeping forward.  Hieber went back to his cruiser and turned on his overhead lights to effect a stop.  Hieber then walked to Hill's vehicle and made contact.  Hill was still fidgeting and making movements as if he was manipulating something on his lap.  As Hieber made contact with Hill, Hill dropped something in his lap that Hieber feared might be a gun.

**{¶ 6}** While this was going on, the store manager had stepped just outside the door of the store, and was saying something to Hieber. Hieber later learned that the manager was telling him that Hill was not the man that the manager had reported as having been selling drugs, that that man had fled the scene earlier. At the time, however, Hieber, concerned for his safety, was focused exclusively on Hill, and did not pay any attention to what the store manager was saying.

**{¶ 7}** When Hieber looked in at Hill, he could see that Hill had dropped a spoon in between his legs. Hieber testified that "I have come across many people who are drug users who use a spoon as part of drug paraphernalia."

**{¶ 8}** Hieber had Hill get out of his vehicle. Hieber saw Hill drop a small piece of paper inside the car as he was exiting.

**{¶ 9}** Hieber had Hill walk back to the police cruiser, patted him down, and placed Hill in the back of the police cruiser.

**{¶ 10}** Hieber then went back to Hill's car and recovered the spoon and the small piece of paper. The paper was folded up and had white powder inside it. Hieber field tested the powder with cobalt reagent, and it tested positive.

**{¶ 11}** Hieber then attempted to read Hill his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, but Hill did not respond as Hieber asked him whether he understood. Hill then started asking Hieber questions. Hieber told Hill he could not converse with him until Hill's *Miranda* rights were explained. Hill then cooperated in the administration of *Miranda* warnings. Ultimately, Hill admitted that he was a drug user, and that "the drugs were his."

**{¶ 12}** Hill testified at the suppression hearing. He testified that Hieber never

attempted to administer *Miranda* warnings. In its decision, the trial court expressly found Hieber's testimony to be more credible on this point.

{¶ 13} Hill was arrested and charged with Possession of Heroin. He moved to suppress evidence and statements. Following a hearing, the motion to suppress was overruled. Hill then pled no contest, was found guilty, and was sentenced to community control sanctions. From his conviction and sentence, Hill appeals.

II

{¶ 14} Hill sets forth two assignments of error:

{¶ 15} "1.   THE TRIAL COURT ERRED IN HOLDING THAT THE OFFICER WAS JUSTIFIED IN APPROACHING, STOPPING AND SEARCHING DEFENDANT'S VEHICLE, IN VIOLATION OF HIS FOURTH AND FOURTEENTH AMENDMENT RIGHTS.

{¶ 16} "a.   The Trial Court Incorrectly Found that Officer Hieber had a Reasonable and Articulable Basis to Approach Mr. Hill's Vehicle and Stop him for Further Investigation.

{¶ 17} "b.   The Trial Court Erred in Overruling Defendant's Motion to Suppress as the Officer's Warrantless Search of his Vehicle Did Not Fall Under Any Exception to the Per Se Rule Against Warrantless Searches.

{¶ 18} "2.   THE TRIAL COURT ERRED IN FAILING TO SUPPRESS DEFENDANT'S STATEMENTS MADE TO THE OFFICER, WHO DID [sic] PROPERLY MIRANDIZE THE DEFENDANT, IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS."

{¶ 19} Hill's Second Assignment of Error can be readily overruled. The trial court, finding Hieber the more credible witness on this point, found that proper *Miranda* warnings

were administered before custodial interrogation, and there is evidence in the record to support that finding.

{¶ 20} As a preliminary matter, the State contends that Hill has forfeited raising any issue beyond the propriety of the initial investigative stop, since that is the only issue he raised in the trial court. We agree.

{¶ 21} The entirety of Hill's motion to suppress is as follows:

{¶ 22} "Comes now the Defendant, Jeffrey Hill, by and through his attorney, David R. Miles, who respectfully moves this Honorable Court for an Order suppressing any and all evidence including statements arising from an illegal stop on July 23, 2009 by Officer Jeff Hieber of the Dayton Police Department.

{¶ 23} "A hearing date has already been set for Thursday, December 3, 2009 at 2:30 p.m. before this Honorable Court. A brief memorandum follows."

{¶ 24} In Hill's memorandum in support of his motion to suppress, he relies exclusively upon the unlawfulness of the investigative stop:

{¶ 25} "According to the police report supplied to the undersigned counsel by way of discovery, Officer Heiber [sic] was dispatched to the Express Mart at 2050 North Gettysburg on a drug call. The dispatch relayed information identifying a black male wearing a green t-shirt, who had previously been told to stay off the Express Mart premises, as the one selling drugs. Officer Heiber [sic] arrived at the parking lot next to Express Mart. Defendant Hill was wearing a green t-shirt and was inside his burgundy Oldsmobile Cutlass. A store employee was also at or outside the store. A short time later, Officer Heiber [sic] stopped Defendant Hill.

{¶ 26} "It is Defendant's position that when Officer Heiber [sic] arrived at the Express

Mart, he was told by a store employee that another individual, who was leaving the Express Mart, was the one concerning the dispatch, not the defendant. Yet, Officer Heiber [sic] stopped Defendant Hill anyway. The end result of the stop was the discovery of illegal drugs on or around Defendant's person/motor vehicle. Additionally, Officer Heiber [sic] engaged in conversation with Defendant Hill. The statements/admissions made by Defendant Hill were obtained as the result of an invalid stop.

{¶ 27} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantees 'the right of people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures.' In this case, Office [sic] Heiber [sic] conducted a 'Terry stop' or an investigatory detention. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The investigation detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. *Terry, supra*. In this case, once Office [sic] Heiber [sic] learned that Defendant Hill was not the individual subject pertaining to the dispatch, Officer Heiber's [sic] further contact with Defendant Hill was improper.

{¶ 28} "In conclusion, if a stop is determined to be unconstitutional, all evidence including statements obtained pursuant to the stop must be suppressed as fruit of the poisonous tree. *Wong Sun v. U.S.* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

{¶ 29} "Defense counsel would respectfully request the opportunity to submit additional legal authority after the conclusion of the suppression hearing."

{¶ 30} At the suppression hearing, no statements were made by counsel framing the issues for the trial court, either before, during, or after the presentation of evidence. No closing arguments were made, and the trial court took the motion under submission. Neither

party filed any memoranda after the hearing.

{¶ 31} Hieber and Hill were the only witnesses at the suppression hearing. Hieber's direct testimony covered everything that he saw, heard or did, from the time of the dispatch to Hill's admission, while in custody in the cruiser, that "the drugs were his." Hill's cross-examination of Hieber was addressed primarily to the propriety of the stop, especially the store manager's having said that Hill was not the individual who had been the subject of the report. Hill's attorney did ask Hieber whether the white piece of paper was dropped inside Hill's car, or outside the car, but that was the only question touching, in any way, upon the subsequent search of Hill's vehicle and the seizure of evidence. Hill's attorney also asked Hieber a couple questions about his conversation with Hill following the giving of *Miranda* warnings.

{¶ 32} Hill testified at the suppression hearing. On direct, he testified exclusively about the stop, excepting only the following colloquy at the end of his direct testimony:

{¶ 33} "Q. Okay. And the officer, he pat you down at the back of your vehicle?

{¶ 34} "A. I think he pat [sic] me down on the police car.

{¶ 35} "Q. Okay. And then what did he do?

{¶ 36} "A. He put me in the police car.

{¶ 37} "Q. Okay. Then did he search your vehicle after that?

{¶ 38} "A. Then he searched my vehicle after that.

{¶ 39} "Q. Okay, all right."

{¶ 40} The subject of statements Hill made to Hieber was only brought up on cross-examination, when Hill denied that he had been "mirandized."

{¶ 41} In the trial court's decision, the trial court concentrated upon the propriety of

the stop, although the search and seizure and the *Miranda* issue were touched upon:

{¶ 42} "Hieber had a reasonable and articulable basis to approach Defendant's vehicle, namely the dispatch for a black male wearing a green shirt suspected of drug dealing. While Defendant may not have been the person about whom the store manager had complained, Hieber was justified in stopping Defendant's vehicle for further investigation since Defendant matched the general description given by the complainant. When Hieber approached Defendant's vehicle, Defendant made furtive gestures and Hieber saw, in plain view, a spoon and a folded up piece of paper. Hieber had an articulable suspicion for Defendant's detention which led to reasonable and objective grounds for Defendant's arrest. Hieber observed in plain view a spoon, which is associated with use of heroin. Also, in plain view was a folded piece of paper containing illegal drugs. Defendant's possession of those items established probable cause for Defendant's arrest. Therefore, Defendant's Motions challenging the detention and arrest are overruled. Moreover, Defendant's Motion, insofar as it challenges any statements by Defendant is overruled, as the Court finds more credible the recitation of events by Hieber, including that Hieber fully advised Defendant of his Miranda rights."

{¶ 43} Hill failed to raise in the trial court the issue of the lawfulness of the search of his vehicle and the seizure of evidence therefrom, independently of the issue of the propriety of the initial stop, which he did raise. We agree with the State that Hill has therefore forfeited the search and seizure issue for purposes of appellate review. *State v. Carter*, Montgomery App. No. 21999, 2008-Ohio-2588, ¶¶ 18-20.

{¶ 44} The mere fact that a trial court, in its decision resolving an issue that a defendant has raised, touches upon an issue that the defendant has not raised, should not "resurrect" a forfeited issue. The State is no less blind-sided in that case. The State was

never on notice, in this case, that it had to put on evidence to establish the lawfulness of the search of Hill's vehicle and the seizure of evidence therefrom, independently of the propriety of the initial stop. The fact that the trial court touched upon the issue of the search and seizure in its written decision does not change the fact that the State was never on notice that this was an issue that it was required to address.

{¶ 45} Therefore, we conclude that only the propriety of the investigative stop is properly before us in connection with Hill's First Assignment of Error. And on that issue, we agree with the trial court.

{¶ 46} The trial court found Hieber to be the more credible witness. Hieber testified that he responded to a report, from a known, non-criminal informant, that a black man in a green t-shirt was selling drugs in the parking lot of the Express Mart on Gettysburg Avenue. When he arrived on the scene, there was only one person in the parking lot – Hill, and Hill was a black man in a green shirt.

{¶ 47} Hieber testified that because of Hill's furtive movements, Hieber became concerned for his safety, as a result of which he focused solely on Hill, and paid no attention to the store manager, who was then telling him, from the manager's position just outside the door of the store, that Hill was not the individual who had been the subject of the report. Hieber testified that he only later became aware of what the store manager was saying on that subject.

{¶ 48} We agree with the trial court that Hieber had a reasonable, articulable suspicion that criminal activity was afoot, involving Hill, which justified a brief, investigative stop.

{¶ 49} Hill's First and Second assignments of error are overruled.

III

**{¶ 50}** Both of Hill's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Laura M. Woodruff
Jennifer S. Getty
Hon. Mary L. Wiseman